## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

JULIE WHITE,

     Plaintiff,

              CIVIL ACTION

v.

              No. 07-2319-CM

THE GRACELAND COLLEGE
CENTER FOR PROFESSIONAL
DEVELOPMENT & LIFELONG
LEARNING, INC.,
d/b/a SKILLPATH SEMINARS,
et al.,

     Defendants.

### MEMORANDUM AND ORDER

   This matter is before the Court on Plaintiff's Motion to Compel (doc. 124).  Plaintiff moves

the Court, pursuant to Fed. R. Civ. P. 37(a)(3)(b), for an order compelling Defendants to:  (1)

provide company-wide documents and information responsive to her First Interrogatory No. 19 and

First Request Nos. 27 and 29; (2) produce personnel files for three individuals responsive to Request

No. 2; (3) provide complete information on Defendants' document retention policy and how such

policy may have affected electronically stored documents and information responsive to

Interrogatory No. 7 and Request No. 14; and (4) re-produce certain electronic documents in their

native format.  Plaintiff also asks the Court to declare that Defendants have waived any privilege

asserted for all documents listed in Defendants' privilege log.  As set forth below, the motion is

granted in part and denied in part.

**I.  Factual Background**

   Plaintiff filed this action alleging that Defendants terminated her employment in violation

of the Family Medical Leave Act ("FMLA") and public policy of the State of Kansas, and civilly

conspired to terminate her employment in retaliation for her exercise of her FMLA rights.  Plaintiff was employed in the On-Site Department of Defendant SkillPath Seminars ("SkillPath") from December 30, 2002 to July 16, 2004.  Plaintiff alleges that she advised her supervisor, Michelle Sullivan, that she would be undergoing scheduled shoulder surgery, and would need FMLA leave for her recovery from the surgery.  She alleges that, weeks before her July 2, 2004 scheduled shoulder surgery date, she advised Sullivan of the surgery and need for FMLA leave.  Sullivan told her to speak with the Human Resources Department about FMLA leave.  That same day, she spoke with Pam Lorenz from the Human Resources Department about her need for FMLA leave.  Lorenz gave Plaintiff a packet of FMLA forms, and told her to have her doctor return them to SkillPath Seminars.

Plaintiff underwent shoulder surgery on July 2, 2004.  She alleges that on the morning of her surgery, someone at SkillPath Seminars presented her supervisor with customer invoices that allegedly were past due, and allegedly had been falsified by Plaintiff.

On July 15, 2004, Plaintiff contacted Shari Wilkens, Vice President of Sales in charge of the On-Site Department, to tell Wilkens that her doctor said she would not be able to return to work until further notice from her doctor.  She alleges that Wilkens became upset when Plaintiff told her this news.  Accordingly to Plaintiff, Wilkens instructed her to fax a note from her doctor about her inability to return to work.  On July 15, 2004, Plaintiff had a Work/Medical Release faxed at 5:33 p.m. to the Human Resources Department.

On the morning of July 16, 2004, Wilkens, Patti Hovland-Saunders, and Lauren Ezell called Plaintiff to inform her that her employment was being terminated.  Hovland-Saunders was Vice President of Human Resources; Lauren Ezell was a supervisor in the On-Site department.

2

Defendants contend that they terminated Plaintiff's employment for legitimate, non-discriminatory reasons that had nothing to do with the FMLA, but rather because she violated company policies during the period from May 2003 through July 2, 2004, including falsification of company records, negligence resulting in significant negative impact to customers, and deliberate non-performance of work.  Plaintiff had received oral counseling and Corrective Counseling forms for her failure to perform her job duties, including processing invoices and contracts, in accordance with SkillPath's policies.  Defendants further allege that Plaintiff falsified company records by backdating or otherwise altering the dates on invoices and for repeatedly failing to timely send out invoices.

Defendants further allege that Plaintiff never requested FMLA leave or requested FMLA paperwork from Defendants.  Defendants and Plaintiff's supervisor, Sullivan, were aware that Plaintiff planned to be out of the office in early July 2004 on vacation but none of the Defendants or Plaintiff's supervisor was aware that Plaintiff planned to undergo shoulder surgery in early July 2004.

Plaintiff served her First Set of Interrogatories and Requests for Production of Documents on Defendants on December 2, 2007.  Defendants served their answers and responses to the discovery on January 21, 2008.  Upon noting that Defendants had asserted numerous objections based on attorney-client privilege, Plaintiff's counsel contacted defense counsel and requested that a privilege log be provided for all documents withheld from production.  Plaintiff's counsel then emailed defense counsel that a motion to compel would be filed if the privilege log was not produced before January 29, 2008.

On January 27, 2008, Plaintiff's counsel sent a "golden rule" letter to defense counsel setting

3

forth the claimed deficiencies in Defendants' answers and objections to her discovery requests.  The letter indicated that if the deficiencies were not cured by February 1, 2008, a motion to compel would be filed.  On February 1, Defendants' counsel advised Plaintiff that a "lengthy response" would be delivered the following Monday.  On February 4, 2008, Plaintiff filed a Motion to Compel (doc. 50).  Later that day, Defendants faxed a five-page letter responding to the January 27th letter from Plaintiff's counsel.  Page 3 of the February 4 letter from defense counsel stated:

> We are in the process of preparing a privilege log dealing with communication between [defense counsel] and its clients in the Bennett case and this case.  This privilege log will be provided to you, but is extensive given the length of the Bennett case.  A paralegal is working on going through six volumes of correspondence from the Bennett case to prepare a privilege log.  Other than these communications between [defense counsel] and its clients, no documents were withheld on the basis of the attorney-client privilege and/or attorney work product doctrine.[1]

Defendants served their supplemental answers and responses to Plaintiff's First Interrogatories and Requests for Production, as well as their privilege log, on February 19, 2008.  On February 25, 2008, the Court held a telephone conference regarding a deposition dispute.  During that conference, the parties were advised that Plaintiff's motion to extend the discovery deadline would be granted, and that the new discovery deadline would be March 20, 2008.  Later on that same day, Plaintiff filed a reply memorandum (doc. 78) withdrawing her motion to compel.  Plaintiff also filed a motion for an extension of time to file a motion to compel.

The parties made further efforts to confer regarding their discovery disputes by holding another telephone conference on February 28, 2008.  The parties were unable to resolve all their disputes by conferring and Plaintiff filed the instant Motion to Compel on March 18, 2008.  Defendants served their supplemental privilege log on March 27, 2008.

---

[1] Ex. 7 to Defs.' Memorandum Opposing Pl.'s Mot. to Compel (doc. 151).

## II.      Discovery Sought

### A.      Company-wide Discovery Responsive to Plaintiff's First Interrogatory No. 19 and First Request Nos. 27 and 29

Plaintiff seeks an order compelling Defendants to produce company-wide documents and information responsive to her First Interrogatory No. 19 and First Request for Production Nos. 27 and 29.   Plaintiff's Interrogatory No. 19 asks Defendants to identify all employees whose employment with Defendant Skillpath ended within the past five years, and, within one year, requested FMLA or medical leave, obtained FMLA forms, notified Defendant Skillpath of a serious health condition, were away from work for four or more consecutive work days due to a medical condition, or received approval for FMLA leave.   Request No. 27 asks Defendants to produce personnel files for all employees identified in response to Interrogatory No. 19.   Request No. 29 seeks all requests and any documents indicating approval or denial for FMLA leave by any Skillpath employee within the last  five years.   Defendants object to the scope of the discovery requests as overly broad and, based on that objection, only produced responsive personnel files for employees employed in the same business unit where Plaintiff was employed, in this case, the On-Site department.

Plaintiff's motion seeks to compel Defendants to produce responsive discovery for the entire company rather than limited to just the On-Site department. She requests that Defendants be ordered to produce personnel files for all employees employed by SkillPath within the last five years that are responsive to First Request Nos. 27 and 29.   Defendants maintain that Plaintiff's request is overly broad in geographic scope and she is not entitled to company-wide discovery of employee personnel files.

Plaintiff first argues that Defendants have waived any objections with respect to employees

working outside of the On-Site department because Defendants failed to state their position that discovery should be limited to the On-Site department in their *original* answers and responses. In their original answers and responses served on January 21, 2008, Defendants objected to Interrogatory No. 19 and Requests No. 27 and 29 as overly broad, unduly burdensome, and not reasonably calculated to lead the discovery of admissible evidence. Defendants indicated that Request No. 27 and Interrogatory No. 19 were overly broad and unduly burdensome because those requests would require Defendants to conduct a company-wide review of "personnel files of every employee whose employment was terminated in the last five years" to locate responsive files. On February 19, 2008, Defendants served their supplemental answers and responses asserting the same objections. In their supplemental answers and responses, Defendants state that they would review all personnel files for current employees, as well as personnel files of all employees terminated in the last five years, but only for the On-Site department because that is the department where Plaintiff and the key decision-makers regarding the termination of her employment were employed.

Federal Rule of Civil Procedure 33(b)(4) requires that "[t]he grounds for objecting to an interrogatory must be stated with specificity. Any ground not stated in a timely objection is waived unless the court, for good cause, excuses the failure." For requests for production of documents, the responding party's response must either state that inspection and related activities will be permitted or "state an objection to the request, including the reasons."[2] When ruling upon a motion to compel, the court generally considers those objections which have been (1) timely asserted, and (2) relied upon in response to the motion.[3] Objections that are not initially raised in the answer or response

---

[2]Fed. R. Civ. P. 34(b)(2)(B).

[3]*Cotracom Commodity Trading Co. v. Seaboard Corp.*, 189 F.R.D. 655, 662 (D. Kan. 1999).

to the discovery are deemed waived.[4]  An objecting party's failure to provide evidence and affidavits in support of  discovery objections at the time initial discovery responses are served does not waive the objections.[5]

The Court finds that Defendants have not waived their objections by their failure to mention, in their original answers and responses, that they were limiting the scope of the discovery requests to the On-Site department.  Defendants preserved their overly broad, unduly burdensome, and relevance objections by asserting them in their original answers and responses.  Defendants then in their supplemental answers and responses informed Plaintiff that they were limiting the scope of the discovery requests to the On-Site department.  Defendants' failure to mention that they were limiting the scope of the discovery requests to the On-Site department in their *original* answers and responses does not waive their previously-asserted objections.

As Defendants have not waived their objections to responding to the discovery for employees working outside of the On-Site department, the Court next determines the appropriate scope of Interrogatory No. 19 and Request Nos. 27 and 29, including whether the scope of these discovery requests should be limited to Plaintiff's work unit, the On-Site department.

When addressing overly broad objections to discovery requests, courts have limited the geographic scope of discovery.[6]  In non-class action employment discrimination cases, the standard

---

[4]*Id.*

[5]*See Majdalani v. Legacy Bank*, No. 06-1317-MLB, 2007 WL 2694043, at *6 (D. Kan. Sept. 11, 2007) (rejecting argument that responding party waived its discovery objections by failing to provide evidence and affidavits supporting the objections with its initial discovery responses).

[6]*See, e.g., Owens v. Sprint/United Mgmt. Co.,* 221 F.R.D. 649, 653-54 (D. Kan. 2004) (limiting scope of discovery to defendant's sub-unit that employed plaintiff rather than larger corporate division); *Mackey v. IBP, Inc.*, 167 F.R.D. 186, 195 (D. Kan. 1996) (limiting scope of discovery to defendant's Emporia plant that employed plaintiff); *Gheesling v. Chater*, 162 F.R.D.

for determining the geographic scope of discovery focuses on "the source of the complained discrimination - - the employing unit or work unit."[7]  In the absence of any evidence that there were hiring or firing practices and procedures applicable to all the employing units, discovery may be limited to plaintiff's employing unit.[8]  Discovery may be expanded from the Plaintiff's employing unit, however, if the plaintiff can show the requested information is "particularly cogent" to the matter[9] or if the plaintiff can show a "more particularized need for, and the likely relevance of, broader information."[10]

Applying the standard for determining an appropriate limitation, the Court finds that Defendants inappropriately limited the scope of Interrogatory No. 19 and Request Nos. 27 and 29 to the On-Site department.  Although the On-Site department is the business unit where Plaintiff worked and where Defendants Ezell and Wilkens, as well as Plaintiff's former supervisor, Michelle Sullivan, are or were employed, Plaintiff has alleged that Defendant SkillPath's human resources department handles the entire company's FMLA requests and termination decisions and, thus Plaintiff has shown more particularized need for and the relevance of company-wide discovery.   She has shown that

---

649, 650 (D. Kan. 1995) (limiting scope to plaintiff's employing unit); *Azimi v. United Parcel Serv., Inc.,* No. 06-2114-KHV-DJW, 2007 WL 2010937, at *2-3 (D. Kan. 2007) (limiting scope of discovery to Kansas district).

[7]*Mackey*, 167 F.R.D. at 195 (quoting *Heward v. W. Elec. Co.*, No. 83-2293, 1984 WL 15666, at *6 (10th Cir. July 3, 1984)).

[8]*Joslin Dry Goods Co. v. EEOC*, 483 F.2d 178, 184 (10th Cir. 1973).

[9]*Heward,* 1984 WL 15666, at *6.

[10]*Haselhorst v. Wal-Mart Stores, Inc.*, 163 F.R.D. 10, 11 (D. Kan. 1995) (citing *Earley v. Champion Int'l Corp.*, 907 F.2d 1077, 1084-85 (11th Cir. 1990); *James v. Newspaper Agency Corp.*, 591 F.2d 579, 582 (10th Cir. 1979); *Serina v. Albertson's, Inc.*, 128 F.R.D. 290, 291-92 (M.D. Fla. 1989); *Prouty v. Nat'l R.R. Passenger,* 99 F.R.D. 545, 547 (D.D.C. 1983)).

8

FMLA decisions are made on a company-wide basis rather than confined with the On-Site department.  Because the FMLA requests are handled by the human resources department for the entire company, discovery of other instances where an employee requested FMLA or medical leave, obtained FMLA forms, notified Defendant Skillpath of serious health condition, was away from work for four or more consecutive work days due to a medical condition, or received approval for FMLA leave would be applicable to all the employing units.  Furthermore, Defendant Hovland-Saunders, whom Wilkes consulted before making the decision to termination Plaintiff's employment and who drafted the termination letter, was not employed within the On-Site department.  Finally, allowing company-wide discovery in this case will not require Defendants to review and produce thousands of personnel files.  Plaintiff submits that in 2004 the On-Site department had about 30 employees and now has 50 employees and the company as a whole presently has 200 employees.  Defendants do not dispute this submission and have not provided any support for their objection that responding to the discovery requests would be unduly burdensome.  Defendants report that they have already searched for and made available over 130 responsive personnel files for all current and former employees employed within or terminated from the On-Site Department during the last five years.  Defendants' objections are therefore overruled.   Plaintiff's Motion to Compel is granted as to her First Interrogatory No. 19 and First Request for Production Nos. 27 and 29.  **Within thirty (30) days of the date of this Memorandum and Order**, Defendants shall serve a supplemental answer responsive to First Interrogatory No. 19 and produce documents responsive to First Request Nos. 27 and 29.   The scope of such answer and production shall be company-wide and shall not be limited to the On-Site Department of Defendant SkillPath.

**B.      Personnel Files (First Request No. 2)**

Plaintiff also seeks to compel Defendants to produce three personnel files as responsive to her First Request No. 2, which requests "[c]urrent personnel files of any current or former employees involved in or provided input on, the decision to terminate Plaintiff's employment." Plaintiff requests that the Court order Defendants to produce complete personnel files for three members of the executive team who supervised the individuals making the decision to termination Plaintiff's employment. Specifically, she seeks to compel production of the personnel files of Chad Braymer, Ray Liggett, and Robb Garr. Plaintiff alleges that, at the time her employment was terminated, Braymer supervised Defendant Wilkens, who is the person responsible for the decision to terminate Plaintiff's employment. She alleges that Liggett and Garr were responsible for supervising Defendant Hovland-Saunders, the individual consulted by Wilkens and who drafted a confirmation of Plaintiff's termination letter.

Defendants contend that Plaintiff is not entitled to these personnel files because none of these three individuals had any role in the decision to terminate Plaintiff's employment. The decision to terminate Plaintiff's employment rested solely with Defendant Wilkens. According to Defendants, neither Hovland-Saunders, Sullivan, nor Ezell made the decision to terminate Plaintiff's employment. Hovland-Saunders and Ezell merely signed off on the termination paperwork and participated in the call wherein Wilkens terminated Plaintiff's employment. Sullivan recommended the termination of Plaintiff's employment. Defendants assert that Wilkens never consulted with or asked for input from Garr, Braymer, or Liggett regarding her decision to terminate Plaintiff's employment. At most, she may have informed these individuals that she decided to terminate Plaintiff's employment after she already made that decision. Defendants claim that these members of the executive management team

did not have any involvement in the decision to terminate Plaintiff's employment and did not give any input on that decision.

Fed. R. Civ. P. 26(b)(1) allows parties to "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense . . .."[11]  "Relevancy is broadly construed, and a request for discovery should be considered relevant if there is 'any possibility' that the information sought may be relevant to the subject matter to the action."[12]

> When the discovery sought appears relevant, the party resisting discovery bears the burden of establishing lack of relevance by demonstrating that the requested discovery either does not come within the broad scope of relevance as defined under Fed. R. Civ. P. 26(b)(1) or is of such marginal relevance that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of broad disclosure.[13]

However, "[w]hen the relevancy of propounded discovery is not apparent its proponent has the burden [] to show the discovery relevant."[14]

Courts in the District of Kansas have generally held that an individual's employment records are relevant and/or reasonably calculated to lead to the discovery of admissible evidence, and therefore discoverable, if the individual (1) is alleged to have engaged in the retaliation or discrimination at issue, (2) is alleged to have played an important role in the decision or incident that

---

[11]Fed. R. Civ. P. 26(b)(1).

[12]*McCoo v. Denny's Inc.*, 192 F.R.D. 675, 685-86 (D. Kan. 2000) (citing *Scott v. Leavenworth Unified Sch. Dist. No. 453*, 190 F.R.D. 583, 585 (D. Kan. 1999); *Etienne v. Wolverine Tube, Inc.*, 185 F.R.D. 653, 656 (D. Kan. 1999)).

[13]*Etienne*, 185 F.R.D. at 656 (*quoting Aramburu v. Boeing Co.*, No. Civ. A. 93-4064-SAC, 1994 WL 810246, at *1 (D. Kan. Sept. 22, 1994)) (internal quotations omitted).

[14]*Id.* at 657 (*citing Pulsecard, Inc. v. Discover Card Servs., Inc.*, 168 F.R.D. 295, 309 (D. Kan. 1996)).

gives rise to the lawsuit, or (3) is a key witness to the events giving rise to the lawsuit.[15]  This general rule is often applied in employment discrimination and civil rights cases, but has also been applied under other circumstances.[16]

In *Moss v. Blue Cross and Blue Shield of Kansas*,[17] a FMLA action, Magistrate Judge Sebelius compelled the defendant employer to produce personnel files of four individuals who were alleged to have been involved either directly or indirectly in the decision to terminate the plaintiff. The court compelled production of the personnel files for the plaintiff's direct supervisor, the individual who created and enforced the employer's FMLA policy, the director of professional relations who had knowledge of the plaintiff's firing, and the EEO assistant who had direct knowledge as to the plaintiff's FMLA usage.[18]

Defendants offer the Declaration of Shari Wilkens in support of their contention that Braymer,

---

[15]*See, e.g.*, *Williams v. Bd. of County Comm'rs*, No. 98-2485-JTM, 2000 WL 823909, at *5 (D. Kan. June 21, 2000) (compelling production of personnel files of non-party individuals who were alleged to be involved in the specific events giving rise to the lawsuit); *Daneshvar v. Graphic Tech., Inc.*, Civ. A. No. 97-2304-JWL, 1998 WL 726091, at *5 (D. Kan. Oct. 9, 1998) (compelling production of personnel files of three "key witnesses" who "played important roles in the employment decisions affecting plaintiff"); *Krenning v. Hunter Health Clinic, Inc.*, 166 F.R.D. 33, 35 (D. Kan. 1996) (compelling production of personnel files of alleged harasser and employer's chief executive officer); *Fox-Martin v. H.J. Heinz Operations*, No. 02-4121-JAR, 2003 WL 23139105, at *1 (D. Kan. Dec. 19, 2003) (Title VII action in which court compelled production of personnel files of employees who either played important roles in the employment decisions or allegedly participated in or witnessed the hostile work environment); *Oglesby v. Hy-Vee, Inc.*, No. Civ. A. 04-2440-KHV, 2005 WL 857036, at *2 (D. Kan. Apr. 13, 2005) (compelling production of individual's personnel file in employment discrimination case where individual witnessed the events defendant claimed gave rise to plaintiff's termination).

[16]*See Stewart v. Mitchell Transp.*, Civ. A. No. 01-2546-JWL, 2002 WL 1558210 (D. Kan. July 8, 2002) (personnel file of defendant tractor-trailer driver relevant in personal injury action where personnel file may reveal history of defendant driver's accidents or safety violations).

[17]241 F.R.D. at 698.

[18]*Id.* at 698 n. 78.

Liggett, and Garr had no involvement in the decision to terminate Plaintiff's employment. Wilkens'
Declaration states that as the Vice-President of Sales in charge of the On-Site Department, she made
the final decision to terminate Plaintiff's employment. She only consulted with Hovland-Saunders
regarding her decision and requested that Hovland-Saunders draft a confirmation of the termination
letter. Wilkens' Declaration further states that Garr, Braymer, and Liggett were not involved in the
decision to terminate Plaintiff's employment and did not provide any input regarding the decision.
It further states:

> Although I may have informed Mr. Garr, Mr. Braymer, or Mr. Liggett of my
> decision to terminate [Plaintiff's] employment, I would have done so after making
> the final decision. I did not consult with any of these individuals before making the
> decision to terminate [Plaintiff's] employment.[19]

Plaintiff disputes Defendants' contention that Garr, Braymer, and Liggett had no involvement
or input in the decision to terminate Plaintiff's employment. She argues that there is ample evidence
that these three members of the management team did, or may have had, involvement in or provided
input on Plaintiff's termination. She refers the Court to deposition testimony from Defendants
Hovland-Saunders and Wilkens in support of her allegation that management employees outside of
the On-site department had input into the decision to terminate Plaintiff's employment. Specifically,
she points out that Defendant Hovland-Saunders testified that if an employment termination involved
an issue other than an employee not meeting their sales numbers, she was required to run the decision
by one of her superiors. Her superiors would be members of the executive team, such as Braymer,
Garr, or Liggett. Hovland-Saunders further testified that she remembered "talking with Wilkens
about talking with Garr" about the decision to terminate Plaintiff's employment. In addition,

---

[19]Ex. C to Defs.' Memorandum Opposing Pl.'s Mot. to Compel (doc. 151).

Defendant Wilkens, who made the final decision to terminate Plaintiff's employment, testified that she did not remember talking to Garr about terminating Plaintiff's employment, but she did not dispute it. She further testified that she did not remember what she discussed with her supervisor Braymer at a meeting on July 7, 2004, eight days before Plaintiff was informed that her employment was terminated.

The Court finds that Plaintiff has sufficiently established the relevancy of the personnel file of Garr, but not for the personnel files of Braymer or Liggett. Although Wilkens' Declaration states that Garr was not involved in the decision to terminate Plaintiff's employment and did not provide any input regarding the decision, the deposition testimony of Hovland-Saunders raises an issue as to whether he was involved and the extent of any involvement. SkillPath's normal practice was that employment termination decisions, other than routine ones for corrective counseling and sales minimums and maximums, were in most cases run by a direct supervisor or an executive team member, if the direct supervisor was not available. At the time Plaintiff's employment was terminated, Hovland-Saunders reported to Garr, the acting Chief Executive Officer ("CEO"). Hovland-Saunders testified that the company was a very hands-on company so when someone was leaving the company it would be run by the acting CEO. She also testified that she remembered talking to Wilkens about talking with Garr about the decision to terminate Plaintiff's employment. In addition to Hovland-Saunders' testimony, Wilkens testified that while she did not remember talking to Garr about terminating Plaintiff's employment, she did not dispute it. Based upon Wilkens' Declaration and the deposition testimony of Wilkens and Hovland-Saunders, the Court finds that there is a factual issue as to whether Garr was consulted, involved in, or provided input into the decision to terminate Plaintiff's employment. This is sufficient to compel production of the

personnel file of Robb Garr.

With regard to Braymer and Liggett, the Court finds that there is no evidence refuting Defendants' contention that they were not involved in the decision to terminate Plaintiff's employment. During the relevant time period, Braymer was Executive Vice President of Operations and supervised Wilkens. Liggett was the CFO and was responsible for supervising Hovland-Saunders. While these individuals may have supervised the individuals who made and were involved in the decision to terminate Plaintiff's employment, the Court does not find their mere status as supervisors over the decision-makers establishes the relevancy of their personnel files. The Court cannot infer that Braymer was involved in the decision merely based upon a calendar entry indicating that Wilkens met with Braymer the week before Wilkes notified Plaintiff that her employment was terminated. Moreover, Hovland-Saunders testified that she remembered talking to Wilkens about talking with Garr, not Braymer, about Plaintiff's employment termination. The Court therefore declines to compel production of the personnel files of Braymer and Liggett. Plaintiff's motion to compel Request No. 2 is therefore granted in part and denied in part.

### C.    Information regarding Defendants' Searches for Electronically Stored Information (First Interrogatory No. 7 and Request No. 14)

Plaintiff next requests that Defendants be ordered to provide complete information on their document retention policy and how such policy may have affected electronically stored documents and information about Plaintiff, in connection with her First Interrogatory No. 7 and Request No. 14. Interrogatory No. 7 asks Defendants to identify any computer or electronic devices used by its management or human resources department in the years 2003 or 2004 and whether the device has been search or analyzed to determine if any files, notes, or documents related to Plaintiff are contained on the device. It further asks that Defendants identify any documents related to Plaintiff

15

found on the device.  Request No. 14 seeks production of "[a]ll documents referred to, identified or referenced in, or served as a basis for, Defendants' Answers to Plaintiff's Interrogatories."

Defendants asserted numerous objections to Interrogatory No. 7, including that the interrogatory was overly broad, unduly burdensome, seeks irrelevant, proprietary, and confidential information, and contains vague and undefined terms.   After objecting, they responded as follows: "The individual Defendants did not utilize any PDAs in 2003 or 2004.  The individual Defendants did utilize computers provided by Defendant SkillPath Seminars in 2003 and 2004.  The network servers used by Defendant SkillPath Seminars were searched for responsive documents."  Defendants thereafter supplemented their answer to Interrogatory No. 7.  The supplemented answer explained Defendants' procedure when it receives a new computer, identified computers and networks that were searched for responsive documents, and explained why some old computers and "loaner" computers were not searched.

In their original response to Request No. 14, Defendants objected to the extent the request sought to invade the attorney-client privilege and/or work product doctrine, but stated that they would produce non-privileged, responsive documents referred to, identified in, or which served as the basis for its answers to Plaintiff's First Interrogatories.   In their supplemental response, Defendants referenced document identified as SPW000001-SPW000220.

Defendants thereafter produced an affidavit authored by Jason Spainhour, Director of Information Systems for SkillPath Seminars, on April 1, 2008, to show they have conducted an adequate search of their electronic systems to find documents pertaining to Plaintiff.

Plaintiff argues that Spainhour's affidavit does not indicate when he conducted his searches, how he conducted the searches, or whether he found any documents as a result of his searches.

16

Additionally, while it indicates he "searched the hard drives" of several employees, it fails to indicate whether the hard drives were in use in 2004 or contain information or documents from 2004. Plaintiff also complains that Spainhour states that he provided access to Braymer and Liggett to Skillpath's servers, but fails to indicate if Braymer or Liggett searched for anything on the servers. Finally, there is no indication that any computers or computer devices used by Garr, Braymer, or Liggett have been searched for documents responsive to Plaintiff's discovery requests.

The Court has reviewed Defendants' discovery responses to Plaintiff's Interrogatory No. 7 and Request No. 14, along with the Spainhour affidavit, and finds that Defendants have provided a sufficient answer and response to these discovery requests. Plaintiff's motion to compel further discovery responsive to her First Interrogatory No. 7 and Request No. 14 is therefore denied.

**D.      Re-production of Documents in Native Format**

Plaintiff requests that Defendants be compelled to produce certain documents, primarily e-mails and e-mail attachments, in their native format, which were previously produced by Defendants in paper form. Specifically, she seeks to compel Defendants to re-produce the following documents in native format:   SPW 44, 45, 46, 64, 65, 72, 51, 52, 53, 54, 55, 74, 66, 67, 68, 69, 70, 80, 79, 75, SP 4959, 4960, and 4973. In addition, Plaintiff requests in her Supplement to Plaintiff's Motion to Compel (doc. 150) that the Court order Defendants to produce documents 2285 and 2286 in their native format.

Defendants object to producing these documents again in native format. They argue that Plaintiff failed to request that electronically stored information be produced in its native format and Plaintiff cannot raise this argument in her second motion to compel. They further argue that they produced e-mails and other electronic information in a "reasonably usable form," as contemplated

by Fed. R. Civ. P. 34(b)(2)(E)(ii).  Plaintiff cannot now require Defendants to re-produce the same information in an electronic form based on a request made two months after her initial discovery requests.  Even if Plaintiff had requested that these documents be produced in their electronic format, Defendants argue that Plaintiff has failed to make a particularized showing of why she needs access to these e-mails in their native format.

Plaintiff claims that Defendants' discovery responses failed to indicate the form that the electronic documents would be produced. Defendants did not state the form it intended to use in producing documents stored electronically. Instead, Defendants converted the electronically-stored documents prior to producing them by forwarding them to an administrative assistant, who then converted them to PDF, printed them, and produced the paper printouts to Plaintiff.   She further argues that Defendants' method of producing documents, by converting them to PDF format and printing them out for production, changed the form of the documents from the way they were kept in the ordinary course of Defendants' business, and is contrary to the requirements of Rule 34.

Federal Rule of Civil Procedure 34(b)(2)(E)(ii) provides that "[i]f a request does not specify a form for producing electronically stored information, a party must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms."  The Rule also provides that "[a] party need not produce the same electronically stored information in more than one form."[20]

The advisory committee notes to the 2006 amendments to Rule 34 provide that the producing party's "option to produce in a reasonably usable form does not mean that a responding party is free to convert electronically stored information from the form in which it is ordinarily maintained to a different form that makes it more difficult or burdensome for the requesting party to use the

---

[20]Fed. R. Civ. P. 34(b)(2)(E)(iii).

information efficiently in the litigation."[21]  The committee notes further provide that "[i]f the responding party ordinarily maintains the information it is producing in a way that makes it searchable by electronic means, the information should not be produced in a form that removes or significantly degrades this feature."[22]

Because Plaintiff failed to specify a form for producing the electronically stored emails and attachments, Defendants were required under Rule 34(b)(2)(E)(ii) either to produce the emails and attachments in the form (1) in which they are ordinarily maintained, or (2) "in a reasonably usable form."   In this case, neither party disputes that Defendants ordinarily maintain their emails and attachments in an electronic format.  Nonetheless, Defendants produced the emails and attachments in paper form.  They accomplished this by converting the emails and attachments to PDF format and then printing them out for production.

Defendants contend that they have complied with Rule 34(b)(2)(E)(ii) by producing the emails and attachments in a "reasonably usable form."   Plaintiff disagrees that Defendants have produced the emails and attachments in a reasonable usable form.  She argues that without electronic and native copies of the paper documents produced by Defendants, which are documents are all connected to events leading up to, and following Plaintiff's termination, she is unable to confirm or contradict that the documents were prepared at the time Defendants say they were prepared.  Plaintiff explains that the timing, of when the decision to terminate Plaintiff was made by Defendants, is a critical issue in this case.  Defendants contend the decision was made on July 2, 2004, the day of Plaintiff's shoulder surgery, without any knowledge by Defendants of the Plaintiff's surgery or

---

[21]Fed. R. Civ. P. 34(b) advisory committee's notes (2006 amendments).

[22]*Id.*

FMLA leave, and was only made after Defendants discovered falsification of company records by Plaintiff, which records allegedly were only discovered because Plaintiff was away from work. Plaintiff believes the decision to terminate her employment was made before July 2, 2004, and coincided with the decision to hire Janine King, and after she notified Defendants of her scheduled surgery and need for FMLA leave. Additionally, without electronic copies, Plaintiff cannot be sure that, when prepared, the documents said what they say now. Plaintiff also wants to ensure that documents 2285 and 2286, an email with a Word attachment outline of the On-Site Operations department job responsibilities while Plaintiff's supervisor was out of the office over the July 4, 2004 holiday, have not been modified to delete any reference to the reason for Plaintiff being "out" of the office beginning on July 2, 2004.

The Court finds that Defendants failed to produce the emails and attachments in either the form in which they are ordinarily maintained, or in a "reasonably usable form," as required by Rule 34(b)(2)(E)(ii). Defendants' conversion of the emails and attachments to PDF documents and production of the PDF documents in paper format does not comply with the option to produce them in a reasonable usable form. The advisory committee notes for the 2006 amendments to Rule 34 provide guidance that Defendants' option to produce in a reasonably usable form does not mean that they are free to convert electronically stored information from the form in which it is ordinarily maintained to a different form that makes it more difficult or burdensome for Plaintiff to use the information efficiently in the litigation.[23] As Defendants have not produced the emails and attachments in a "reasonably usable form," Plaintiff is entitled to have the emails and attachments produced in their native format. She has further explained the critical importance of obtaining them

---

[23]Fed. R. Civ. P. 34(b) advisory committee's notes (2006 amendments).

in their native format with metadata intact.

The Court notes that this discovery dispute is an example of one which the re-production of discovery could have been altogether avoided had the parties adequately conferred at their Fed. R. Civ. P. 26(f) conference regarding production of electronically stored information ("ESI"). While not all disputes regarding discovery of ESI can be prevented by early efforts by counsel to investigate and consider the possible forms discovery may be produced, many disputes could be managed and avoided altogether by discussing the issue before requests for production are served. Guideline 4(f) of the Guidelines of Discovery of Electronically Stored Information, available on the District of Kansas' website, specifically mentions that during the Fed. R. Civ. P. 26(f) conference, counsel should attempt to agree on the format and media to be used in the production of the ESI.

Plaintiff's Motion to Compel is therefore granted as to her request to compel Defendants to produce certain documents, primarily e-mails and e-mail attachments, in their native format, which were previously produced by Defendants in paper form. **Within thirty (30) days of the date of this Memorandum and Order**, Defendants shall re-produce the following documents in their electronic, native format:   SPW 44, 45, 46, 64, 65, 72, 51, 52, 53, 54, 55, 74, 66, 67, 68, 69, 70, 80, 79, 75, SP 4959, 4960, 4973, 2285, and 2286.

### E.   Documents Listed on Privilege Logs

Plaintiff next requests that the Court declare that Defendants have waived any attorney-client privilege as to documents withheld based upon Defendants' failure to submit their privilege log in a timely manner and failure to provide an adequate privilege log. Defendants maintain that they have not waived any claims to attorney-client privilege or work product doctrine.

### 1.   Timeliness of Privilege Log

Plaintiff argues that Defendants waived any privilege by, without any justification, not submitting their privilege log in a timely manner. Defendants served their responses to Plaintiff's document requests and interrogatories on January 22, 2008. These responses included objections based on attorney-client privilege and work-product doctrine, but Defendants did not produce a privilege log until February 19, 2008, two weeks after Plaintiff filed her first motion to compel. Defendants thereafter supplemented their privilege log on March 27, 2008, after Plaintiff filed the motion to compel presently pending before the Court.

Defendants maintain that they did not waive any claims to privilege. They point out that the overwhelming majority of documents listed on their privilege log are emails created during the *Bennett* litigation, a case unrelated to Plaintiff's and which involved an entirely different scenario. It was Plaintiff who insisted that they not only list privileged communications created in this case, but all privileged communications created in the *Bennett* case. This required Defendants to engage in the time consuming process of reviewing over six volumes of correspondence files and other documents created in the *Bennett* case. Defendants further assert that they did not engage in any unjustifiable delay or act in bad faith in preparing and serving their privilege log. They provided a privilege log within a month of serving their responses to Plaintiff's discovery requests and producing responsive documents.

Federal Rule of Civil Procedure 26(b)(5)(A) provides that when a party withholds information otherwise discoverable by claiming that the information is privileged or subject to protection as trial-preparation material, the party must:

> (I) expressly make the claim; and
> (ii) describe the nature of the documents, communications, or tangible things not
> produced or disclosed--and do so in a manner that, without revealing information

itself privileged or protected, will enable other parties to assess the claim.[24]

A party who withholds discovery materials because of a claim of privilege or work product protection must notify the other party that it is withholding material.[25] The party who withholds discovery materials must provide sufficient information, usually in the form of a privilege log, to enable the other party to evaluate the applicability of the privilege or protection.[26] Failure to follow the Federal Rules of Civil Procedure may result in waiver of the attorney-client privilege and/or work-product protection.[27] Although this result is not mandated by the federal rules, the Advisory Committee contemplated the sanction: "[t]o withhold materials without [providing notice as described in Rule 26(b)(5) ] is contrary to the rule, subjects the party to sanctions under Rule 37(b)(2), and may be viewed as a waiver of the privilege or protection."[28]  Acknowledging the harshness of a waiver sanction, however, courts have reserved such a penalty for only those cases where the offending party committed unjustified delay in responding to discovery.[29]  Minor procedural violations, good faith attempts at compliance and other such mitigating circumstances bear against finding waiver.[30]

---

[24]Fed. R. Civ. P. 26(b)(5)(A)(i)-(ii).

[25]Fed. R. Civ. P. 26(b)(5) advisory committee's notes (1993 amendments).

[26]*Id.*

[27]*Sprint Commc'ns Co., L.P. v. Vonage Holdings Corp.,* No. 05-2433-JWL-DJW, 2007 WL 1347754, at *2 (D. Kan. May 8, 2007) (citing 8 Charles Alan Wright, Federal Practice and Procedure § 2016.1, at 228-29 (2d ed. 1994)).

[28]Fed. R. Civ. P. 26(b)(5) advisory committee's notes (1993 amendments).

[29]*Sprint Commc'ns,* 2007 WL 1347754, at *2; *Heavin v. Owens-Corning Fiberglass*, No. 02-2572-KHV-DJW, 2004 WL 316072, at *2 (D. Kan. Feb. 3, 2004).

[30]*Sprint Commc'ns,* 2007 WL 1347754, at *2 (citing *First Sav. Bank, F.S.B. v. First Bank Sys., Inc*., 902 F. Supp. 1356, 1361-63 (D. Kan. 1995), *rev'd on other grounds*, 101 F.3d 645 (10th Cir. 1996)).

This Court has found waiver too harsh a sanction for untimely submission of the privilege log in most cases where the delay is not excessive or unreasonable.[31]  In *Heavin v. Owens-Corning Fiberglass*,[32] the defendant served its privilege log approximately 23 days after serving its discovery responses asserting protection based on work product and attorney-client privilege. When the plaintiff requested a more detailed privilege log, the defendant responded within ten days.[33]  The Court found waiver of any privilege was too harsh of a sanction.[34]

The Court also made a similar finding of no waiver due to late submission of privilege logs in *Sawyer v. Southwest Airlines*.[35]  The Court found no waiver even though the party asserting privilege waited more than two months after it served its initial responses to the requests for production to provide a meaningful privilege log.[36]  In a more recent case, *Sprint Communications Co., L.P. v. Vonage Holdings Corp.*,[37] the Court found the party asserting privilege had not waived any protection for the documents listed in its privilege log based on the untimely submission of its privilege log.  The Court declined to find waiver as there was no evidence presented regarding whether the privilege logs were served in conjunction with the corresponding privilege objections

---

[31]*Sprint Commc'ns,* 2007 WL 1347754, at *2*; Heavin,* 2004 WL 316072, at *2;  *Sawyer v. Southwest Airlines,* Nos. Civ.A.01-2385-KHV, Civ.A.01-2386-KHV, 2002 WL 31928442, at *1 (D. Kan. Dec. 23, 2002).

[32]No. 02-2572-KHV-DJW, 2004 WL 316072, at *2 (D. Kan. Feb. 03, 2004).

[33]*Id.*

[34]*Id.*

[35]2002 WL 31928442, at *1.

[36]*Id.*

[37]2007 WL 1347754, at *2.

or, if served after the corresponding privilege objection, how long after the objection and withholding of documents it took to serve the corresponding privilege log.[38]

In the few cases where the court found waiver based upon the untimely submission of a privilege log, the privilege log had been prepared after the court was asked to rule on the issue and after entry of an order directing production of the documents.[39]  These cases are distinguishable from the facts presented here.  Defendants' original privilege log was provided before the instant Motion to Compel was filed and thus before the Court was asked to rule on the issue.  Defendants' supplemental privilege log was provided before the instant motion was fully briefed.

The Court finds that the relatively short delay by Defendants in providing their privilege log does not justify a finding of waiver.  Defendants produced their answers and responses to Plaintiff's interrogatories and requests for production on January 22, 2008.  Their privilege log was produced less than a month later on February 19, 2008.  Defendants later provided a supplemented privilege log, along with their supplemental answers and responses to Plaintiff's First Interrogatories and Requests for Production of Documents, on March 27, 2008.  Although Defendants failed to serve their supplemental privilege log at the time they served their original answers and responses to Plaintiff's First Interrogatories and Requests for Production of Documents, the Court finds no unjustified delay on the part of Defendants.  The Court recognizes the amount of effort and time it

---

[38]*Id.*

[39]*See Williams v. Sprint/United Mgmt. Co.*, No. 03-2200-JWL-DJW, 2006 WL 3694862, at *3 (D. Kan. Dec. 13, 2006) (court found waiver where "new and improved" privilege log was prepared after the court was asked to rule on the issue and after entry of an order directing production of the documents); *Rural Water Sys. Ins. Ben. Trust v. Group Ins.*, 160 F.R.D. 605, 607 (D. Kan. 1995) (court found waiver when privilege log was produced eleven months after the court was requested to determine the issue and after entry of the court's order directing production of the documents).

takes to prepare a privilege log.  Defendants' first privilege log is 8 pages long and contains entries for 121 documents.  Defendants' supplemented privilege log is 27 pages long and contains entries for 371 documents.  Given the number of documents listed on Defendants' privilege log, the Court does not find the relatively short delay in providing it to be unjustified.  Accordingly, the Court finds that Defendants have not waived any protection for the documents listed in its privilege log based the untimely submission of their privilege log.

### 2.        Sufficiency of Privilege Log

Plaintiff next argues that Defendants have waived any privilege by, without any justification, failing to provide an adequate privilege log with the detailed information that has been well established for the District of Kansas.  Defendants maintain that their privilege log provides sufficient detail and guidance to Plaintiff on their claims of privilege.

Defendants, as the party asserting objections based on work product immunity and attorney-client privilege, bear the burden of establishing that either or both apply.[40]  Defendants must make a "clear showing" that the asserted objection applies.[41]  To carry that burden, Defendants must "describe in detail" the documents or information sought to be protected and provide "precise reasons" for the objection to discovery.[42]  In addition, Defendants must provide sufficient information to enable the court to determine whether each element of the asserted objection is satisfied.[43]  A

---

[40]*McCoo v. Denny's, Inc.*, 192 F.R.D. 675, 680 (D. Kan. 2000) (citing *Boyer v. Bd. of County Comm'rs,* 162 F.R.D. 687, 688 (D. Kan. 1995)).

[41]*Ali v. Douglas Cable Commc'ns, Ltd. P'ship,* 890 F. Supp. 993, 944 (D. Kan. 1995).

[42]*McCoo*, 192 F.R.D. at 680 (citing *Nat'l Union Fire Ins. Co. v. Midland Bancor, Inc.,* 159 F.R.D. 562, 567 (D. Kan. 1994)).

[43]*Id.* (citing Jones v. Boeing Co., 163 F.R.D. 15, 17 (D. Kan.1995)).

"blanket claim" as to the applicability of the privilege/work product protection does not satisfy the burden of proof.[44]  Defendants' failure to meet this burden when the trial court is asked to rule upon the existence of the privilege is not excused because the document is later shown to be one that would have been privileged if a timely showing had been made.[45]

Since Plaintiff filed her Motion to Compel challenging the sufficiency of Defendants' February 19, 2008 privilege log, Defendants have supplemented their privilege log.  This supplemented privilege log appears to have addressed many of the deficiencies identified by Plaintiff in her Motion to Compel.  Plaintiff indicates in her reply brief that she had not had an opportunity to review Defendants' supplemental log, served on March 27, 2008, in its entirety, but does identify three purported deficiencies with the supplemental privilege log.

Plaintiff asserts that several names listed in the supplemental privilege log are not accompanied by any indication of what position the person holds.  The Court, however, notes that all of the individuals identified by Plaintiff in her reply brief are listed with a shortened abbreviation of their position title on the last page of Defendants' supplemental privilege log, attached as Exhibit J to Defendants' response (doc. 151).

Plaintiff's next claimed deficiency with the supplemental privilege log is that Defendants appear to question whether certain communications between Skillpath Seminars and its insurers are privileged as the statement: "QUESTION ON WHETHER THIS IS PRIVILEGED – COMMUNICATION BETWEEN SKILLPATH AND AIG REP?" appears on two entries on page 27 of the privilege log.  As suggested by Plaintiff, Defendants' inclusion of this language on two

---

[44]*Id.* (citing *Kelling v. Bridgestone/Firestone, Inc.*, 157 F.R.D. 496, 497 (D. Kan. 1994)).

[45]*Peat, Marwick, Mitchell & Co. v. West,* 748 F.2d 540, 542 (10th Cir. 1984).

27

entries of the privilege log implies that Defendants may have themselves questioned whether the privilege applies to these documents. The Court is not convinced that the appearance of this language in the log summary column negates Defendants' assertion of the privilege. Defendants should carefully consider and question whether the asserted privilege applies. Here, the statement appears merely to be left on the log in error and the Court draws nothing from its appearance on the log.

Plaintiff's final noted deficiency is that the remaining 10 entries on page 27 of the privilege log do not appear to be privileged communications because many of them either simply convey factual information or are communications between persons who are not the client nor legal counsel. Plaintiff cites privilege log entries for "Email correspondence regarding [Plaintiff's] lawsuit history," and "Email correspondence regarding attorney's review of [Plaintiff's] divorce proceedings" as examples of what appear communications of factual information. She also challenges whether Defendants can assert attorney-client privilege when the privilege log entries indicates the communications do not involve an attorney, such as between non-attorneys, Judy Whitney and Rick Boyd, and Rick Boyd and Ray Liggett.

The Court has reviewed the last ten privilege log entries and finds that all but one document was either authored by or received by defense counsel. That privilege log entry is authored by a risk manager for Community of Christ and the recipient is CFO Liggett. Although written communication between corporate management employees is not necessarily protected by the attorney-client privilege, a party may be able to successfully demonstrate applicability of privilege by establishing that the communication was made in confidence for the primary purpose of obtaining legal advice.[46] In order to do so, the party asserting the privilege must be able to establish the

_____

[46]*See Williams v. Sprint/United Mgmt. Co.*, No. 03-2200-JWL-DJW, 2006 WL 266599, at *3 (D. Kan. Feb. 1, 2006) (holding that attorney-client privilege could apply to communications of

communication was made in confidence for the primary purpose of obtaining legal advice even though not a direct communication from or to counsel.[47]

Here, the privilege log entry indicates that the communication consists of "Email correspondence regarding insurance coverage, limits, and relaying legal advice on disclosure of coverage information." This description of the communication between an insurance risk manager to SkillPath's CFO is sufficient for the Court to conclude that the communication was made for the primary purpose of obtaining legal advice even though it was not authored by an attorney, nor received by one.

With regard to Plaintiff's challenge that some of the privilege log entries appear communications of factual information, the Court agrees with Plaintiff that the three entries for "Email correspondence regarding [Plaintiff's] lawsuit history," and "Email correspondence regarding attorney's review of [Plaintiff's] divorce proceedings" appear to be conveying factual information rather than legal advice. While the focal point of the protection afforded by the attorney-client privilege lies with "communications between attorneys and their clients" and protects disclosure of substantive communication between attorney and client, the privilege "it does not protect disclosure of the underlying facts by those who communicated with the attorney."[48] There must be a connection between "the subject of the communication and the rendering of legal advice" for the attorney-client

---

legal advice between non-lawyer members of management and human resources department if the communication was made in confidence for the primary purpose of obtaining legal advice).

[47]*Id.*

[48]*In re Grand Jury Subpoena To Kan. City Bd. of Pub. Utils.*, 246 F.R.D. 673, 678 (D. Kan. 2007).

privilege to shield the communication from disclosure.[49] Legal advice must predominate for the communication to be protected.[50]  The privilege does not apply where the legal advice is merely incidental to business advice.[51]

The Court finds the information provided in Defendants' privilege log for the three entries referencing Plaintiff's lawsuit history and divorce proceedings, challenged by Plaintiff, is inadequate to meet Defendants' burden of proof with regard to a claim of protection based on the attorney-client privilege. The Court thus finds these three documents are not protected from disclosure by the attorney-client privilege and thus shall be produced within thirty (30) days from the date of this Memorandum and Order.

## III.    Request for Expenses and Attorneys' Fees

Plaintiff requests that the Court award her all reasonable expenses and attorneys' fees incurred in connection with her motion to compel.  Federal Rule of Civil Procedure 37(a)(5)(C) allows a court to award a moving party fees and expenses where, as here, a motion to compel is granted in part and denied in part.  Under that rule, the court may "apportion the reasonable expenses for the motion."

Under the circumstances of this case, the Court does not find an award of fees and expenses to be warranted.  Plaintiff's request for reasonable expenses is therefore denied.  Each party shall bear its own fees and expenses incurred in connection with the Motion to Compel.

**IT IS THEREFORE ORDERED THAT** Plaintiff's Motion to Compel (doc. 124) is granted

---

[49]*Id.*

[50]*Id.*

[51]*Id.*

in part and denied in part, as set forth herein.   All production ordered herein shall be completed

**within thirty (30) days of the date of this Memorandum and Order**.

IT IS SO ORDERED.

Dated in Kansas City, Kansas on this 7th day of August, 2008.


s/ David J. Waxse
David J. Waxse
United States Magistrate Judge