## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

JULIE WHITE,

                Plaintiff,

v.

THE GRACELAND COLLEGE
CENTER FOR PROFESSIONAL
DEVELOPMENT & LIFELONG
LEARNING, INC.,
d/b/a SKILLPATH SEMINARS,
et al.,

                Defendants.

CIVIL ACTION

No. 07-2319-CM

## MEMORANDUM AND ORDER

Plaintiff Julie White brings this FMLA action against Defendants The Graceland College Center for Professional Development and Lifelong Learning, Inc., d/b/a Skillpath Seminars, Sharon Wilkens, Lauren Ezell, and Patti Hovland-Saunders.  This matter is before the Court on Plaintiff's Motion to Compel Defendants to Produce Documents, Images, and Information Related to Certain Electronic Documents that Defendants were Previously Ordered to Produce (doc. 263).  Plaintiff requests that the Court compel Defendants to re-produce the PST or OST files of Outlook mailboxes that either sent or received certain emails at issue, as well as electronic and native copies of the emails and attachments from the inbox folders of the recipients.  She further requests that Defendants be ordered to produce mirror images of the hard drives that created any of the documents attached to the emails, and allow her computer expert to verify the accuracy of the system clocks of the computers that created the email attachments.  As set forth below, the motion is granted in part and denied in part.

I.      **Relevant background**

Plaintiff's current motion is the latest in the parties' ongoing discovery dispute relating to the creation dates of certain emails and attachments sent between Plaintiff's supervisors. Plaintiff previously sought an order compelling Defendants to re-produce electronic, native copies of emails and attachments Defendants had originally produced in paper form. Plaintiff sought the electronic and native copies to confirm or contradict when the emails and attachment documents were prepared. Plaintiff claims that the decision to terminate her employment was made before July 2, 2004, and coincided with the decision to hire Janine King, and after she notified Defendants of her scheduled surgery and need for FMLA leave. Defendants contend the decision was made on July 2, 2004, the day of Plaintiff's shoulder surgery, without any knowledge by Defendants of the Plaintiff's surgery or FMLA leave. According to Defendants, the decision was only made after Plaintiff was away from work and they discovered she had been falsifying company records. By Memorandum and Order dated August 7, 2008, the Court granted Plaintiff's motion compelling Defendants to re-produce electronic, native copies of certain emails and attachments. Defendants thereafter produced the emails and attachments in their native electronic format.

On September 18, 2008, Plaintiff filed a motion to compel Defendants to comply with the Court's August 7, 2008 Order. She asked the Court to compel Defendants to produce, in native format, the attachment to Patti Hovland-Saunders' July 15, 2004 email to Shari Wilkens, or Defendants' backup tapes for analysis by a computer expert. She alternatively requested that Defendants provide, under Court supervision, her computer expert with access to Defendants' networks or hard drives so that the native attachment could be viewed. The Court conducted a telephone motion hearing on September 25, 2008. At that hearing, Plaintiff indicated that she would

need a computer expert to analyze the electronic documents. The Court entered an order (doc. 255) ruling that "Plaintiff's request for an order compelling Defendants to produce emails and attachments in their native electronic format with metadata intact is denied without prejudice pending Plaintiff obtaining a computer expert to advise on the issue."

Plaintiff thereafter retained a computer expert to analyze three emails between her supervisors and their associated attachments to determine the creation dates of these materials. The expert found discrepancies between the creation and sent dates of the emails and attachments, but could not make any definitive conclusions without more information. This motion to compel followed.

## II.    Duty to confer

Defendants contend that Plaintiff's motion should be summarily denied for failure to comply with meet and confer obligations, as required by Federal Rule of Civil Procedure 37(a)(1) and D. Kan. Rule 37.2. They argue that Plaintiff's counsel made no efforts to confer prior to filing the motion. Plaintiff does not dispute that no efforts to confer were made prior to refiling her motion to compel. She instead relies on the Court's September 25, 2008 Order, which denied without prejudice her request for an order compelling Defendants to produce emails and attachments in their native electronic format with metadata intact "pending Plaintiff obtaining a computer expert to advise on the issue." She interpreted the Court's order to mean that she could reapply for relief based on input from the computer expert alone.

The Court's ruling denying without prejudice Plaintiff's earlier motion to compel did not suspend the conferring requirements of Fed. R. Civ. P. 37(a)(1) and D. Kan. Rule 37.2. The duty to confer applies to each motion to compel filed, even if the motion was previously denied without

prejudice.[1]   Based upon the posture of the current dispute, the Court understands why Plaintiff's counsel could have interpreted the Court's September 25, 2008 Order to mean that Plaintiff could reapply for relief based solely upon input from her expert.   Under these circumstances, the Court is persuaded that the interests of justice are best served by taking up the motion on its merits.   The issue raised in Plaintiff's motion is a fairly narrow issue involving a limited set of emails and attachments, and this is not the first time this issue has been before the Court.   It appears likely, even if Plaintiff had attempted to confer prior to refiling the motion, that these efforts would have been futile based upon the parties' history in this case.   Finally, the Court has permitted a non-conferring party to file a renewed motion after satisfying its duty to confer under Fed. R. Civ. P. 37(a) and D. Kan. Rule 37.2.[2]   Here, the Court declines to further delay resolution of the matter to allow Plaintiff an opportunity to satisfy her duty to confer.   The Court will instead waive Plaintiff's non-compliance with the duty to confer and will consider the merits of her re-filed motion.

## III.   Relief sought in present motion to compel

In her re-filed motion, Plaintiff seeks an order compelling Defendants:  (1) to re-produce electronic and native copies of certain emails and attachments from the "inbox" folders of the recipients; (2) to produce the PST or OST files of Outlook mailboxes that either sent or received these emails; (3) to produce mirror images of the computer hard drives that created any of the

---

[1]*See Mike v. Dymon, Inc.*, Civ. A. No. 95-2405-EEO, 1996 WL 606354, at *1 (D. Kan. Oct. 17, 1996) (conferring efforts made with regard to the original motion did not satisfy the duty to confer with respect to a subsequent amended motion).

[2]*See Fulcher v. City of Wichita,* Civ. A. No. 06-2095-EFM-DJW, 2008 WL 5136613, at *1 (D. Kan. Dec. 8, 2008) (allowing moving party opportunity to refile motion to compel discovery after it satisfied its duty to confer); *Brackens v. Shield*, Civ. A. No. 06-2405-JWL-DJW, 2007 WL 1805800, at *1 (D. Kan. June 22, 2007) (allowing moving party opportunity to file renewed motion to compel after satisfying duty to confer).

documents attached to the emails; and (4) to allow Plaintiff's computer expert to verify the accuracy of the system clocks of the computers that created the email attachments.  The first email at issue was sent by Michelle Sullivan, Plaintiff's On-Site Operations Supervisor, to Patti Hovland-Saunders, Vice President of Human Resources, and is dated July 2, 2004 ("Email #1").  The email contains the subject line "Julie White-Pending Termination" and has an attachment named "Julie-Termination.exe."   The second email at issue was sent by Hovland-Saunders to Shari Wilkens, Vice President of Sales in charge of the On-Site Department, with subject line "CC Basic Form 06092004.doc" with a date and time stamp of July 15, 2004, 3:57 p.m. ("Email #2").   It contains an attachment named "CC Basic Form 06092004.doc." The third email at issue was sent from Wilkens to Hovland-Saunders with the subject line "revised form for Julie White" with a date and time stamp of July 15, 2004, 4:40 p.m. ("Email #3").   It contains an attachment named "CC Basic Form 06092004.doc."

Plaintiff retained a computer expert to analyze these three emails to determine the creation dates.  The expert concluded in his report that drawing any definitive conclusions was not possible without more information, such as knowledge of the circumstances under which the files were collected, verifying the accuracy of the computer's system clock, and examination of the residual data on the computer creating the files.   He further indicated that it was necessary to review the email in the sender's "sent items," as well as the recipient's "inbox" when determining when an email was created and transmitted.  The report also stated that in order to accurately determine when the documents in question and associated emails were created, it was necessary to conduct a forensics analysis of the computer that created the documents and emails.  Plaintiff now seeks to compel Defendants to provide additional information for her computer expert to determine when the

emails and attachments were created, when they were modified or edited, and what modifications or edits were made to the documents after they were created.

Defendants oppose the motion.  They argue that none of Plaintiff's requests are appropriate and they have substantially fulfilled their discovery obligations as to the requests for PST files and native copies of emails and attachments.  They further assert that the relief sought by Plaintiff is overly broad, unduly burdensome, and seeks irrelevant information. Even if the relief sought by Plaintiff was not overly broad and unduly burdensome, the hard drives and other information Plaintiff seeks are not available or accessible.   The Court will address each of Plaintiff's requests separately.

**A.      Request for electronic and native copies of emails and attachments from the recipients' inbox folders**

Plaintiff requests an order compelling Defendants to re-produce electronic and native copies of the three emails at issue, and any attachments, from the "inbox" folders of the email recipients. She maintains that the creation dates of the emails and attachments, as well as what modifications were made to the emails and attachments, will be a critical issue at trial.  She claims that metadata indicates that the emails and attachments provided by Defendants in response to the Court's August 7, 2008 Order are not exact replicas of the emails and attachments that were sent because some or all of the sent items were modified after they were sent.  Plaintiff seeks assurance she has the unmodified versions by Defendants' production of the emails and attachments from the recipients' inbox folders.  Plaintiff further argues that Defendants have offered no reason why the emails and attachments in the recipients' inbox folders cannot or should not be produced.

Defendants point out that Plaintiff has the burden to demonstrate why their production of

emails from the senders' sent folders is somehow not sufficient.  Defendants explain that discrepancies as to the creation dates of the email attachments are due to those documents being templates, a form document which is modified as needed.  They further state that they do not believe that electronic or native copies from other hard drives are available or accessible.  In support of this statement, Defendants attach the December 2, 2008 Declaration of Jason Spainhower, Director of Information Systems.[3]  He states in his Declaration that "Hovland-Saunders' e-mails are not available prior to January 1, 2005."[4]  He further describes the efforts to locate the emails.  He explains that Email #1 from Sullivan to Hovland-Saunders was only found on Sullivan's archived folders even though she left the company in 2004.  As to Email #2, sent from Hovland-Saunders to Wilkens, the Spainhower affidavit states that the email was only found in Wilkens' inbox folder. Email #3, the email sent from Wilkens to Hovland-Saunders, was found only in Wilkens' sent folder.

The Court has reviewed the report of Plaintiff's computer expert for the three emails and their associated attachments.   The report provided by Plaintiff's computer expert (doc. 267) indicates that he found discrepancies between the creation and sent dates of the emails and attachments.  Specifically, the expert noted that Email #1 had a date stamp of July 2, 2004, however, the creation time of the email was three months later on October 4, 2004.   The report further indicates that the expert found the metadata report for "CC Basic Form 06092004.doc," which was attached to the July 15, 2004 Emails #2 and #3, showed that the original document was created a month earlier on June 9, 2004.   These discrepancies noted by Plaintiff's computer expert raise an

---

[3]Exh. 1 to Defs.' Sur-Reply Opposing Pl.'s Mot. to Compel (doc. 278).

[4]*Id.*

issue as to whether Defendants' production of emails from the senders' "sent" folders satisfies Defendants' obligation under the Court's August 7, 2008 Order to produce the emails and email attachments in their native format.  The Court finds that Defendants have adequately satisfied their obligation.  Defendants' production of Email #1 and attachment from the sender's archived folder, Email #2 and attachment from the recipient's inbox folder, and Email #3 and attachment from the sender's sent folder was sufficient to comply with their obligation under the Court's August 7, 2008 Order.  Plaintiff did not specify, nor did the Court order, that Defendants produce the emails and attachments from both the recipients' inbox folder, as well as the senders' sent folder.  For most cases where the creation dates of the emails and attachments are not an issue, production of the emails in their electronic native format from either the senders' sent folder or the recipients' inbox folder would be sufficient.

Notwithstanding the Court's finding that Defendants have satisfied their obligation with respect to the Court's August 7, 2008 Order, the Court finds that Plaintiff has shown that extenuating circumstances exist to justify compelling Defendants to re-produce in native format these emails and attachments from both the email recipients' inbox folders and the senders' sent folders.  In this case, the creation date of the emails and attachments is disputed by the parties, Plaintiff's computer expert has noted discrepancies in the metadata as to the creation dates, and Defendants have not adequately explained the discrepancies.  Under these circumstances, the Court finds that further inquiry and additional information is needed to explain the noted discrepancies in the creation dates of the emails and attachments.

Requiring Defendants to re-produce the same emails from the senders' inbox folders as proposed by Plaintiff is a reasonable solution.  Defendants, however, claim that they cannot re-

produce the emails from the inbox folders because no emails for Hovland-Saunders are available prior to January 1, 2005.  Hovland-Saunders was the recipient of Emails #1 and #3.  As such,  it would reasonable to assume that these two emails and attachments would have been in her email inbox folder at some point.  She sent Email #2 and thus it would be reasonable to assume that this email with its attachment would be in her sent folder.  Defendants' statement that no emails are available for Hovland-Saunders prior to January 1, 2005 does not explain why they are not available. Defendants may have a reasonable explanation, but at this point the Court is left wondering why no emails for Hovland-Saunders prior to January 1, 2005 are available considering that Defendants' email is stored on an Exchange server and these same emails were available for Sullivan and Wilkens.

Accordingly, the Court grants Plaintiff's request for electronic and native copies of emails and attachments from the recipients' inbox folders.  **Within twenty (20) days of the date of this Memorandum and Order**, Defendants shall re-produce Emails #1 and #3, in their electronic, native format, from Hovland-Saunders' email inbox folder.  Because they have already produced Email #2 from the recipient's inbox folder, Defendants shall produce this email, in its electronic, native format, from Hovland-Saunders' sent folder.  If Defendants cannot produce these emails because they are no longer available, they shall provide Plaintiff and the Court with an explanation why no emails for Hovland-Saunders are available prior to January 1, 2005.

The Court finds that the briefing on this issue does not provide sufficient information for the Court to make a specific finding regarding where the electronically-stored information ("ESI") in question may be located.  For example there is no discussion in the briefing of where email is stored, or whether backups or archives exist that might contain the ESI in question.  The District of Kansas'

Guidelines for Discovery of Electronically Stored Information (ESI) require that counsel, prior to the Fed. R. Civ. P. 26(f) conference, to become knowledgeable about their clients' information management systems and their operation, including how information is stored and retrieved. The Guidelines also provide that counsel should make a reasonable attempt to review their clients' ESI to ascertain the contents, including backup, archival and legacy data (outdated formats or media). Thus, counsel should have become knowledgeable about Defendants' email system. In the future, counsel would assist the Court in resolving these kind of disputes if a clear description of the information management system were provided.

**B.    Request for the PST or OST files of Outlook mailboxes that either sent or received the emails**

Plaintiff also requests that the Court order Defendants to produce the PST or OST files[5] of the Outlook mailboxes that either sent or received the emails. Again the reason for the request is to aid her computer expert in determining the creation dates of the emails at issue. Defendants state that they have already produced to Plaintiff the pertinent PST files of Outlook mailboxes relating to the emails, and they have produced electronic and native copies of the emails from Wilkens' PST files. They argue that Plaintiff has offered no reason why the entire OST files, including information that has no relation to the emails at issue, should be produced. They further state that the information sought is not available or accessible because Sullivan's hard drive was wiped clean when she left in 2004 and the computer was reissued to another employee. They have attached the

_____

[5]A PST file (.pst) is a personal store folder file in Microsoft Outlook normally stored on the user's hard drive. An OST file (.ost) is a folder file in Microsoft Outlook that is used to save folder information that can be accessed offline and makes it possible for the user to work offline and then to synchronize changes with the Exchange server the next time they connect. *See The Sedona Conference Glossary: E-Discovery & Digital Information Management,* 2nd ed. (Dec. 2007); and *What Does That Mean? A Supplemental Glossary of Modern Tech Terms*, 25 No. 2 Law PC 5 (Oct. 15, 2007).

November 25, 2008 Declaration of Jason Spainhower, the Director of Information Systems.[6] Mr. Spainhower states that Defendant SkillPath's practice is to wipe the computer hard drive clean when an employee leaves and to reissue the computer to another employee. It also does not keep records of which used computers are reissued to other employees. The Declaration further states that the hard drive of Hovland-Saunders was maintained intact when she left in 2007, however, it is not the same hard drive she had in 2004 because it was upgraded at least once between 2004 and 2007.

As previously noted, Plaintiff's computer expert has identified discrepancies with the creation dates of Email #1 and the attachments to Emails #2 and #3. Plaintiff now requests that the Court order Defendants to produce the Outlook PST and OST files of the mailboxes that sent or received the emails at issue so that her computer expert can make more definitive conclusions about when the emails and attachments were created, when they were modified or edited, and what modifications and edits were made to the documents after they were created. The Court is persuaded that the Outlook PST and OST files would likely assist the expert in determining when the emails and attachments were created. Defendants, however, have already produced electronic and native copies of the emails from Wilkens' PST files so the Court will not order re-production of these PST files. Defendants have indicated that Sullivan's hard drive may no longer be available. They also state that Hovland-Saunders' hard drive was maintained, but may not be the same hard drive used in 2004. The Court is unclear whether Sullivan and Hovland-Saunders' PST files would only be found on their respective hard drives in use in 2004 or whether they could be located elsewhere, such as on a network server or backup system.

To the extent Defendants have not produced the Outlook PST files from the mailboxes of

---

[6]Exh. A to Defs.' Mem. Opposing Pl.'s Mot. to Compel (doc. 268).

either Hovland-Saunders or Sullivan for the three emails at issue, they shall produce these PST files, in their electronic native format, to Plaintiff. In addition, the Court finds that Defendants should also produce the OST files for review by Plaintiff's computer expert. Counsel are directed to meet and confer, using their computer experts, to agree on a process for producing the OST files so as to limit the information to that reasonably necessary for Plaintiff's expert to determine the creation dates and the possible reasons for the noted discrepancies in creation dates of the emails and attachments. Defendants shall produce these files to Plaintiff **within twenty (20) days of the date of this Memorandum and Order**.

### C. Request for mirror image of hard drives creating emails and attachments

Plaintiff also requests that Defendant be compelled to produce mirror images[7] of the hard drive of the computers that created any of the documents attached to the emails. Defendants object to the request as overly broad and unwarranted. They claim the hard drives of Wilkens, Hovland-Saunders, and Sullivan contain a vast amount of information that is completely irrelevant to Plaintiff's claims or her employment in general. These hard drives may also contain a large amount of information that is protected by the attorney-client privilege and work product doctrine or protected by the Health Information Portability and Accountability Act ("HIPAA"). They assert that Plaintiff has offered no evidence or other support for her argument that mirror images of entire hard drives are necessary. Finally, they state that the applicable computer hard drives may not even be available or accessible in light of their policy of wiping clean a hard drive when an employee

---

[7]A "mirror image" is generally described as "a forensic duplicate, which replicates bit for bit, sector for sector, all allocated and unallocated space, including slack space, on a computer hard drive." *See Balboa Threadworks, Inc. v. Stucky*, No. 05-1157-JTM-DWB, 2006 WL 763668, at *3 (D. Kan. Mar. 24, 2006). *See also The Sedona Conference Glossary: E-Discovery & Digital Information Management,* 2nd ed. (Dec. 2007), p. 34.

leaves.

Requests for physical inspection of another party's hard drives or requests for forensic and mirror imaging of hard drives are generally governed by Fed. R. Civ. P. 34(a), which allows a party to request that another party "produce and permit the requesting party . . . to inspect, copy, test, or sample . . . electronically stored information."[8]  The advisory committee notes to the 2006 amendment to Rule 34(a) suggest that direct inspection of an opponent's hard drive is not routine, but may be justified in some circumstances:

> Inspection or testing of certain types of electronically stored information or of a responding party's electronic information system may raise issues of confidentiality or privacy. The addition of testing and sampling to Rule 34(a) with regard to documents and electronically stored information is not meant to create a routine right of direct access to a party's electronic information system, although such access might be justified in some circumstances. Courts should guard against undue intrusiveness resulting from inspecting or testing such systems.[9]

At least three decisions in the District of Kansas have considered and permitted the inspection and forensic or mirror imaging of computer hard drives in the context of civil discovery.[10] In *G.D. v. Monarch Plastic Surgery*,[11] the court granted the plaintiffs' request to compel production of computer for forensic testing or mirror imaging, but denied the request as to files or records related to non-parties and the defendants' employees.  In another case, *Balboa Threadworks, Inc.*

---

[8]Fed. R. Civ. P. 34(a)(1)(A).

[9]Fed. R. Civ. P. 34(a) advisory committee notes to 2006 amendment.

[10]*See G.D. v. Monarch Plastic Surgery, P.A.*, 239 F.R.D. 641, 648 (D. Kan. 2007); *Balboa Threadworks, Inc. v. Stucky*, No. 05-1157-JTM-DWB, 2006 WL 763668, at *3 (D. Kan. Mar. 24, 2006); *Jacobson v. Starbucks Coffee Co.*, No. 05-1338-JTM, 2006 WL 3146349, at *6-7 (D. Kan. Oct. 31, 2006).

[11]239 F.R.D. at 648.

*v. Stucky*,[12] the court commented that "[i]t is not unusual for a court to enter an order requiring the mirror imaging of the hard drives of any computers that contain documents responsive to an opposing party's request for production of documents."  In *Jacobson v. Starbucks Coffee Co.*,[13] the court, noting that production of a computer for inspection is unusual, was persuaded that the circumstances of the case, including a history of incomplete and inconsistent responses to production requests, warranted production of the computer or a mirror image of the hard drive for the plaintiff's inspection.

In *McCurdy Group v. American Biomedical Group, Inc.*,[14] the Tenth Circuit, in an unpublished 2001 opinion, upheld the lower court's denial of a request to compel production of the opposing party's computer hard drives for copying and mirror imaging.  The Tenth Circuit called the request for a physical inspection of the opposing party's computer hard drives a "drastic discovery measure" given that the moving party had never explained why it should be allowed to inspect the hard drives and the only asserted reason for the request was because the moving party was skeptical that the producing party had produced copies of all relevant and nonprivileged documents from the hard drives.[15]

While still cautious, many courts now consider requests for inspection or requests for forensic or mirror imaging of computers to be neither routine nor extraordinary.[16]  Apart from

---

[12]2006 WL 763668, at *3.

[13]2006 WL 3146349, at *6-7.

[14]9 Fed. Appx. 822, 831 (10th Cir. 2001).

[15]*Id.*

[16]*John B. v. Goetz*, 531 F.3d 448, 459 (6th Cir. 2008) ("To be sure, forensic imaging is not uncommon in the course of civil discovery."); *Clearone Commc'ns, Inc. v. Chiang*, Civ. No.

compelling production and inspection of computer hard drives and forensic imaging where trade secrets and electronic evidence are involved, courts have also compelled production based upon discrepancies or inconsistencies in a response to a discovery request or the responding party's unwillingness or failure to produce relevant information.[17]

In this case, the Court is persuaded that Plaintiff has shown sufficient circumstances to allow some type of direct access to the computer hard drives that created or modified the documents attached to Emails #2 and #3. Plaintiff has established that her expert noted discrepancies as to the creation date of the email attachment "CC Basic Form 06092004.doc" and Defendants have not adequately explained the discrepancies. She has further established that more information is needed to make more definitive conclusions as to the creation dates of the documents and when they were modified or edited, and what modifications and edits were made to the documents after they were

_____

2:07cv00037TC, 2007 WL 3275300, at *1 (D. Utah Nov. 5, 2007) (imaging of opposing parties' computers is neither viewed as routine, nor completely extraordinary).

[17]*See, e.g., Koosharem Corp. v. Spec Personnel, LLC,* Civ. A. No. 6:08-583-HFF-WMC, 2008 WL 4458864, at *2 (D.S.C. Sept. 29, 2008) (allowing forensic analysis on defendants' computers based upon failure to produce documents and due to the relevance of electronic information stored on the computers); *Ferron v. Search Cactus, L.L.C.*, No. 2:06-CV-327, 2008 WL 1902499, at *2 (S.D. Ohio April 28, 2008) (allowing plaintiff's forensic computer expert to mirror image plaintiff's computer systems' hard drives based upon plaintiff's failure to place sufficient litigation hold and failure to otherwise produce the relevant information); *P.J. ex rel. Jensen v. Utah,* 247 F.R.D. 664, 672 (D. Utah 2007) (allowing defendants limited access to the relevant documents on the plaintiffs' crashed hard drive and computer because the plaintiffs provided only relevant research documents that they saved or printed); *Orrell v. Motorcarparts of Am., Inc*., No. Civ. 3:06CV418-R, 2007 WL 4287750, at *7 (W.D.N.C., Dec. 5, 2007) (allowing the employer defendant to conduct forensic examination of the plaintiffs' home computer where plaintiffs had wiped the hard drive of her work-issued laptop computer and had testified that she forwarded email to her home computer); *Ameriwood Indus., Inc. v. Liberman,* No. 4:06CV524-DJS, 2006 WL 3825291 (E.D. Mo. Dec. 27, 2006), as amended, 2007 WL 685623 (E.D. Mo. Feb. 23, 2007) (allowing independent expert to obtain and search a mirror image of defendants' computer equipment upon plaintiff presenting evidence suggesting that defendants failed to produce responsive email).

created.  Plaintiff has further pointed out that the hard drives for Wilkens and Hovland-Saunders, the individuals who attached the document to their respective emails, should have been preserved as soon as Defendants became aware of Plaintiff's claims.  Their hard drives may have also been preserved as a result of notice of claims in an earlier filed case in the District Court of Johnson County, Kansas styled, *The Greenwood College Center for Professional Development and Lifelong Learning Inc., d/b/a/ SkillPath Seminars v. Bennett*, Case No. 05-CV-03845 ("Bennett case").

Although the circumstances of this case justify some type of court-ordered access by Plaintiff, the Court is not convinced that the best remedy is to compel Defendant to produce mirror images of the hard drive of the computers that created or modified the email attachment "CC Basic Form 06092004.doc."  The parties have not provided sufficient information for the Court to accurately determine that information pertaining to the creation or modification of these documents could be located on Wilkens or Hovland-Saunders' hard drives.  The Court will instead order counsel for the parties, using their computer experts, to confer regarding the location of information pertaining to the creation or modification of the email attachment "CC Basic Form 06092004.doc." Counsel for the parties shall then, using their computer experts, set forth in writing an agreed set of procedures or protocols for Plaintiff or her expert to inspect the hard drives or computer systems containing such information.  Any such procedure should be designed to preserve claims of attorney-client privilege and protect the confidentiality of personal information located on the hard drives that is not related to the claims and defenses or the subject matter of the present case.  To the extent necessary, the parties should consider any amendments or supplements that might be advisable to the present Protective Order (doc. 59) in order to protect the confidentiality of such personal information.

### D.     Request to Review System Clocks

Plaintiff also requests that her computer expert be permitted to verify the accuracy of the system clocks that created the emails and attachments at issue.  Her computer expert concluded in his report that, without being able to verify the system clock of the computer and without having mirror images of the hard drives that created the documents at issue, it is not possible for him to make definitive conclusions about when the documents were created, when they were modified or edited, and what modifications or edits were made to the documents after they were created.

Defendants argue that allowing Plaintiff's expert to review the system clocks would be futile. They point out that a computer's system clock is part of a computer's motherboard.   As such, they have no way of determining whether the current motherboard in the computers is the same motherboard that was present in 2004.  Plaintiff's alleged expert does not suggest that he has the ability to determine how a system clock was set in 2004.

The Court agrees with Defendants that granting Plaintiff's request that her computer expert to inspect the system clocks that created the emails and attachments at issue would be futile. Plaintiff has not shown that permitting such inspection years after the emails and attachments were created and sent would aid in resolving the discrepancies noted by her expert.

**IT IS THEREFORE ORDERED THAT** Plaintiff's Motion to Compel Defendants to Produce Documents, Images, and Information Related to Certain Electronic Documents that Defendants were Previously Ordered to Produce (doc. 263) is granted in part and denied in part, as set forth herein.

**IT IS FURTHER ORDERED THAT** Plaintiff's Request for Oral Argument (doc. 279) is denied.

17

**IT IS SO ORDERED**.

Dated in Kansas City, Kansas on this 18th day of March, 2009.


s/ David J. Waxse
David J. Waxse
United States Magistrate Judge